```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _2/11/2020_
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
BLAKE MARINE GROUP, LLC,

                      Plaintiff,

-against-

FRENKEL & COMPANY,

                      Defendant.

18 Civ. 10759 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Blake Marine Group, LLC, a marine salvager, was hired by non-party, Forward Marine, LLC ("Forward"), to help stabilize an oil rig owned by Forward following storm and hurricane damage. Compl. ¶¶ 12, 14–15, ECF No. 9. Plaintiff and Forward entered into a pollution removal contract, with the understanding that Plaintiff's services would be paid by Forward or its underwriters. *Id.* ¶ 23. Plaintiff alleges that Forward's insurance broker, Defendant Frenkel & Company, had represented that insurance covering the cost of pollution removal was in place. *Id.* ¶ 26. Defendant, however, had failed to place such a policy. *Id.* ¶ 31. Plaintiff performed the pollution removal for the rig and brings this action to recover payment for its services. *Id.* ¶¶ 30, 32. Now before the Court is Defendant's motion for judgment on the pleadings on counts five, six, seven, and eight of the complaint. ECF No. 39. For the reasons stated below, Defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

    The following facts are taken from the complaint and are presumed to be true for the purposes of considering the motion for judgment on the pleadings. *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

    In 2017, Defendant was the primary marine insurance broker for Forward, which owned the Hercules 211, an oil rig located off the coast of central Louisiana. Comp. ¶ 10; Compl. Ex. C

at 3, ECF No. 9-3.  Between August and October 2017, the rig was in an area hit by a number of tropical storms and hurricanes.  Compl. ¶ 12.  In November 2017, Forward discovered that the rig had suffered damage, compromising its structural stability.  *Id.* ¶ 13.  On December 3, 2017, Forward hired Plaintiff to conduct a survey of the rig and to stabilize it.  *Id.* ¶¶ 14–15.  The United States Coast Guard was notified of the rig's condition, *id.* ¶ 17, and on December 14, 2017, the agency issued orders directing (1) that the rig be removed or made seaworthy within ten days, *id.* ¶¶ 18–19; Compl. Ex. A, ECF No. 9-1, and (2) that 116,000 gallons of waste oil onboard the rig be removed, *id.* ¶¶ 20–21; Compl. Ex. B, ECF No. 9-2.

On December 16, 2017, Forward and Plaintiff entered into a pollution removal contract, which was "conditioned on written assurances . . . of payment of [Plaintiff's] fees and expenses" by Forward or its underwriters.  Compl. ¶ 23.  On December 19, 2017, Defendant sent Forward a copy of Forward's excess liability policy, which listed an underlying primary pollution policy for the rig.  *Id.* ¶ 24.  Plaintiff alleges that, on December 20, 2017, Defendant's broker, Richard Duarte, stated during a conference call with the U.S. Coast Guard, representatives of Forward and Plaintiff, as well as other insurers and technical advisers, that primary pollution insurance was in place for the rig.  *Id.* ¶¶ 25–26.

On December 26, 2017, Duarte emailed representatives of Plaintiff and Forward, advising them that a primary pollution policy was in fact not available for the rig, and that emergency pollution prevention and mitigation services would not be covered by insurance.  *Id.* ¶ 31; Compl. Ex. D at 1, ECF No. 9-4.  Nevertheless, on December 28, 2017, the deadline by which Plaintiff had to mobilize to avoid imposition of damages and fines by the U.S. Coast Guard, Plaintiff began pollution removal on the rig.  Compl. ¶ 30.  Because Forward had not obtained the pollution insurance policy, Plaintiff was not paid.  *Id.* ¶¶ 7, 31.  On August 27,

2018, Forward assigned to Plaintiff its title and ownership of all claims for recovery against Defendant; as consideration, Plaintiff agreed to refrain from taking legal action against Forward for the more than $1.2 million in Plaintiff's outstanding invoices. *Id.* ¶¶ 5–7, 32.

## DISCUSSION

I. Legal Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a Rule 12(c) motion, a court applies the same standard as that applicable to a motion under Rule 12(b)(6). *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). In order to survive a Rule 12(c) motion, therefore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

In evaluating a Rule 12(c) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon in bringing suit. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A claim will not be dismissed on a motion for judgment on the pleadings unless the court is satisfied that the complaint cannot state any set of facts that would entitle plaintiff to relief. *Sheppard*, 18 F.3d at 150.

II. Analysis

A. Common Law Pollution Salvage

Plaintiff claims Defendant is liable for damages under a theory of common law pollution

3

salvage. Compl. ¶¶ 55–63.

Marine salvage is the "service which is voluntarily rendered to a vessel needing assistance, and is designed to relieve her from some distress or danger either present or to be reasonably apprehended." *B.V. Bureau Wijsmuller v. United States*, 702 F.2d 333, 339 (2d. Cir. 1983) (internal quotation marks and citation omitted).[1] "Three elements are necessary to a valid salvage claim: 1. A marine peril. 2. Service voluntarily rendered when not required as an existing duty or from a special contract. 3. Success in whole or in part, or that the service rendered contributed to such success." *The Sabine*, 101 U.S. 384, 384 (1879). "Suits for salvage may be *in rem* against the property saved or the proceeds thereof, or *in personam* against the party at whose request and for whose benefit the salvage service was performed." *Id.* at 386.

Defendant argues that suits for salvage brought *in personam*, as here, can only lie against the vessel owner, and that Defendant, a marine insurer broker, cannot be held liable under such a theory. Def. Mem. at 6, ECF No. 39-1. Plaintiff contends, however, that courts have extended liability to non-vessel owners who have some "direct pecuniary interest" in the salvage. Pl. Mem. at 4–6, ECF No. 47. Plaintiff argues that, as the rig's insurance broker, Defendant is an entity with a "direct pecuniary interest." *Id.* The Court agrees.

"It is well settled that a salvor's remedy in personam is not confined to the legal ownership of the property, but extends to one who has a direct pecuniary interest in its preservation." *The G.L. 40*, 66 F.2d 764, 766 (2d Cir. 1933) (citing *United States v. Cornell Steamboat Co.*, 202 U.S. 184, 193 (1906) (additional citations omitted)); *Tice Towing Line v.*

---

[1] The law of salvage originated to preserve property and promote commerce, and is unique in the Anglo-American legal system. *B.V. Bureau Wijsmuller*, 702 F.2d at 337. "Chief Justice Marshall commented that when property on land exposed to grave peril is saved by a volunteer, no remuneration is given. 'Let precisely the same service, at precisely the same hazard, [b]e rendered at sea, and a very ample reward will be bestowed in the courts of justice.'" *Id.* (quoting *Mason v. The Ship Blaireau*, 6 U.S. (2 Cranch) 240, 266 (1804)).

*James McWilliams Blue Line*, 51 F.2d 243, 249 (S.D.N.Y. 1931), *modified*, 57 F.2d 183 (2d Cir. 1932) (holding the same); *see also Cornell Steamboat*, 202 U.S. at 193 ("[T]he remedy *in personam* is not confined to the legal owner of the property saved, but extends to one who has a direct pecuniary interest in such property.").

Moreover, insurers are considered parties with a pecuniary interest. In *The G.L. 40*, the Second Circuit held that "[t]he insurer had a direct interest in the raising of the barge, requested the [salvor] to perform the service, and is therefore liable in an action in personam by the salvor to recover the value of the services." 66 F.2d at 766; *see also Cresci v. The Yacht, Billfisher*, 874 F.2d 1550, 1551 (11th Cir. 1989) (observing that the insurer may have an interest in the saved vessel); *cf. Frankel v. Dravo Corp.*, 479 F. Supp. 55, 56 (D.D.C. 1979) (holding that mortgagee of salvaged vessel would be liable for a salvage award).

Here, Plaintiff alleges that Defendant, an insurance broker, failed to place an insurance policy. *See generally* Compl. Taking all well-pleaded facts as true at this stage and drawing all reasonable inference in favor of Plaintiff, the non-movant, the Court concludes that, had an insurance policy been procured, the insurer would have had a direct pecuniary interest in the timely salvage of the rig, because Plaintiff alleges that a delayed pollution salvage would have subjected the rig and its insurer to additional fines and penalties from the U.S. Coast Guard. *See, e.g.*, *id.* ¶¶ 18–22.

Moreover, Plaintiff alleges that Defendant negligently failed to obtain insurance for the pollution salvage. Compl. ¶¶ 38–48. "It is well settled that a broker who negligently fails to procure a policy stands in the shoes of the insurer and is liable to the insured." *Soho Generation of New York, Inc. v. Tri-City Ins. Brokers, Inc.*, 683 N.Y.S.2d 31 (1998); *Chandler v. H.E. Yerkes & Assocs., Inc.*, 784 F. Supp. 119, 125 (S.D.N.Y. 1992) (collecting cases). It follows, then, that

Defendant stands in the place of the insurer, and that Defendant can be considered a party with monetary interest in the salvage. Therefore, Plaintiff may bring an *in personam* pollution salvage action against Defendant.[2]

Accordingly, Defendant's motion for judgment on the pleadings on count five is DENIED.

## B. Texas Statutory Claims

Count six of the complaint alleges damages for violations of the Texas Insurance Code, and count seven alleges damages for violations of the Texas Deceptive Trade Practices Act ("DTPA"). Compl. ¶¶ 64–82. Defendant argues that Plaintiff, who is not a Texas resident, lacks standing to bring either claim, because such claims are limited to Texas residents or activities affecting a plaintiff in Texas. Def. Mem. at 7–10. For the reasons below, the Court grants Defendant's motion. The Court addresses the two claims in the order of the parties' briefing on the matter.

### 1. Texas Deceptive Trade Practices Act

Plaintiff brings the DTPA claim both individually and as Forward's assignee. Compl. ¶ 62; *see also* Pl. Mem. at 6–10. Plaintiff is a Pennsylvania corporation, Compl. ¶ 3, and Forward is a company organized under the laws of Texas, with a principal place of business located in Texas, *id.* ¶ 4; *see also id.* ¶ 68.

Courts have recognized that the DTPA is "directed at *Texas* consumers." *Deburro v.*

---

[2] Defendant's argument, raised for the first time in its reply, that Plaintiff should have sued under 33 U.S.C. § 2701 instead of common law salvage, Def. Reply at 3, ECF No. 52, is beside the point. "The authority of the federal courts to resolve salvage disputes long has been a part of the 'admiralty and maritime Jurisdiction' referred to in Article III, section 2 of the United States Constitution." *Jones v. Sea Tow Servs. Freeport NY Inc.*, 30 F.3d 360, 364 (2d Cir. 1994) (citing *Mason*, 6 U.S. (2 Cranch) at 249); *see also Nat'l Labor Relations Bd. v. Star Color Plate Serv.*, 843 F.2d 1507, 1510 n.3 (2d Cir. 1988) (rejecting a party's "attempts to raise for the first time [a new question] in its reply brief").

*Apple, Inc.*, No. 13 Ca. 784, 2013 WL 5917665, at *5 n.5 (W.D. Tex. Oct. 31, 2013). The DTPA, therefore, applies to litigants who are Texas residents, located in Texas at the time of the facts giving rise to suit, or affected by activities occurring in the state. *See id.*; *Bass v. Hendrix*, 931 F. Supp. 523, 536 (S.D. Tex. 1996) (holding that the DTPA does not apply to activities which "took place in New York or Connecticut and were not directed toward a Texas resident"). None of these scenarios applies to Plaintiff individually. Plaintiff is not a Texas resident and sues over activities that occurred in the Gulf of Mexico. Compl. ¶¶ 3, 10. Because neither Plaintiff nor the activities giving rise to the action is situated in Texas, the Court concludes that Plaintiff lacks standing to bring a DTPA claim on its own behalf.

Next, the Court considers whether Plaintiff may assert a DTPA claim as Forward's assignee. Because this suit is brought in diversity jurisdiction, the Court must follow the substantive law of Texas. *See Pearson v. Ne. Airlines, Inc.*, 307 F.2d 131, 133 (2d Cir.), *on reh'g*, 309 F.2d 553 (2d Cir. 1962) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). And under Texas law, "DTPA claims generally cannot be assigned by an aggrieved consumer to someone else." *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 92 (Tex. 2004); *see also Charter Sch. Sols. v. GuideOne Mut. Ins. Co.*, 407 F. Supp. 3d 641, 654 (W.D. Tex. 2019) ("Plaintiff argues it was assigned the right to sue under the DTPA . . . . This argument runs counter to Texas Supreme Court precedent[.]" (citing *PGG Indus.*, 146 S.W.3d)); *Montoya v. State Farm Mut. Auto. Ins. Co.*, No. 16-00005, 2016 WL 5942327, at *6 (W.D. Tex. Oct. 12, 2016) ("[T]he Texas Supreme Court has declared that DTPA claims generally cannot be assigned by an aggrieved consumer to someone else because the cause of action is 'personal and punitive.'" (quoting *PGG Indus.*, 146 S.W.3d at 87)). Plaintiff's policy rationales for expanding the application of the DTPA to permit assignment, Pl. Mem. at 10, are foreclosed by the Texas

7

Supreme Court's reasoning in *PGG Industries*. *See PGG Indus.*, 146 S.W.3d at 87–92. Plaintiff, therefore, cannot bring a DTPA claim, either individually or as an assignee of Forward's rights.

2. Texas Insurance Code

Plaintiff's sixth cause of action arises under the Texas Insurance Code. Compl. ¶¶ 64–71 (citing Tex. Ins. Code Ch. 541 §§ 541.060(a)(1) & 061). Plaintiff also brings this claim individually and as Forward's assignee. *Id.*; *see also* Pl. Mem. at 6–10.

The Court holds that Plaintiff cannot bring this claim on its own behalf. "Under the Texas Unfair Settlement Practices Act, standing [to bring a breach of the Texas Insurance Code] is limited to Texas residents." *Kouveliotes v. USAA Cas. Ins. Co.*, No. 12 Civ. 5273, 2012 WL 4955271, at *3 (D.N.J. Oct. 16, 2012) (internal citations omitted). Here, Plaintiff is a not a resident of Texas, and Plaintiff does not allege that the insurance agreement was subject to Texas law. *See generally* Compl. As such, Plaintiff lacks standing to bring this claim individually.

Moreover, Texas courts have held that Texas Insurance Code violations are non-assignable. *Montoya*, 2016 WL 5942327, at *6 ("[F]ederal courts have recognized the [Texas] Insurance Code is . . . 'personal and punitive,' and have extended the *PPG* holding to bar assignment of claims under the Insurance Code.") (collecting cases). Plaintiff, therefore, cannot bring this claim as Forward's assignee.

Lastly, because amendment of counts six and seven would be futile, the Court will grant Defendant's request to dismiss counts six and seven with prejudice. *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 Civ. 7508, 2009 WL 3346674, at *2 (S.D.N.Y. Oct. 15, 2009) ("A court has discretion to dismiss with prejudice if it believes that amendment would be futile or would unnecessarily expend judicial resources." (internal quotation marks, citation, and brackets omitted)).

Accordingly, Defendant's motion for judgment on the pleadings on Plaintiff's Texas statutory claims is GRANTED, and counts six and seven are DISMISSED with prejudice.

### C. New York General Business Law

Count eight of the complaint asserts violations of New York General Business Law § 349 ("NYGBL"), which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]" N.Y. Gen. Bus. Law § 349(a); *see* Compl. ¶¶ 77–82. To maintain an action under NYGBL § 349, a plaintiff must allege that the "defendant's acts or practices . . . [had] a broad impact on consumers at large." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 309 (1995).

Defendant argues that Plaintiff fails to state a claim for which relief can be granted, because it alleges harm only to itself, and not to consumers at large. Def. Mem. at 10–12. The Court agrees.

In *Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01 Civ. 2272, 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004), an insurer sued its insurance broker and alleged violations of NYGBL § 349 for, among other things, fraudulently inducing it to insure certain entities. *Id.* at *2, *9. There, the court dismissed the NYGBL § 349 claim, because the plaintiff "allege[d] only a private injury, namely that defendants conspired to fraudulently induce [plaintiff] into insuring [livery car drivers] members. Nothing about the complaint alleges as consumer injury or harm to the public interest." *Id.* at *9. Such is the case here. Plaintiff complains of monetary losses that it claims it suffered because an insurance policy was not procured as represented; its damages are purely private in nature. "Fundamentally, [NYGBL] § 349 is a consumer protection device," and a "plaintiff must not only allege that the defendants engaged in deceptive acts or practices, but also that the conduct was consumer oriented." *Id.*; *see also New York Univ.*, 87 N.Y.2d at 320

9

("Private contract disputes unique to the parties . . . would not fall within the ambit of the statute." (internal quotation marks and citation omitted)). Plaintiff has not alleged that Defendant engaged in consumer-oriented conduct.

Plaintiff argues, however, that Defendant's alleged false and misleading statements are sufficient to meet the statute's requirement of a showing of broad impact, because it alleges that Defendant made misrepresentations to the U.S. Coast Guard. Pl. Mem. at 12–13. Plaintiff relies on caselaw that "recognize[s] that misrepresentations to regulatory entities can constitute 'consumer-oriented' acts or omissions." *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 20 F. Supp. 3d 305, 334 (E.D.N.Y. 2014), *aff'd*, 806 F.3d 71 (2d Cir. 2015) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)). In *Securitron*, the Second Circuit held that the element of consumer-oriented wrongdoing was met because the false statements in question led a regulatory agency to "undertake unnecessary investigations and interfered with its decision making process by complaining of non-existent potential danger." 65 F.3d at 264 (internal quotation marks omitted). The inducement of the public agency to expend unnecessary resources was, the court concluded, "surely . . . contrary to the public interest." *Id.*

Such authority is inapposite, however, because Plaintiff does not allege that Defendant induced any public agency into unnecessary action. Although Defendant is alleged to have made misleading statements to the U.S. Coast Guard, Plaintiff does not assert that such statements caused the agency to undertake further efforts. To the contrary, Plaintiff claims that Defendant's misrepresentation that it had obtained pollution insurance had the opposite effect: the U.S. Coast Guard was satisfied that private pollution clean-up was imminent and determined that governmental action would not be needed. *See* Compl. ¶ 26. At bottom, Plaintiff's injury is

10

private, and, as such, falls outside the ambit of NYGBL § 349.

Accordingly, Defendant's motion for judgment on the pleadings on count eight is GRANTED, and the claim is DISMISSED without prejudice.

## CONCLUSION

For the reasons set forth above, Defendant's motion for judgment on the pleadings is GRANTED in part and DENIED in part. Count five of the complaint is not dismissed, counts six and seven are DISMISSED with prejudice, and count eight is DISMISSED without prejudice.

The Clerk of Court is directed to terminate the motion at ECF No. 39.

SO ORDERED.

Dated: February 11, 2020
       New York, New York

_____
ANALISA TORRES
United States District Judge